JAMES ROARTY, Appellant, *v.* EDWARD C. McDERMOTT et al., Defendants; FRANK J. WALGERING, Respondent.

McC. died leaving a widow and four children, who were minors, him surviving. By his will he gave to a son, the oldest child, one-fourth of all his residuary estate after payment of debts, and after deducting the widow's dower right, the same to be paid to him in cash on his becoming of age. The residue was given to the widow for life, the remainder to the three younger children. The widow was appointed executrix with power to sell or mortgage any part of the estate "for the purpose of carrying out the provisions" of the will or whenever in her judgment it might be for the best interest of the estate, "applying the proceeds to the benefit of  *  *  *  said estate." The real estate was all incumbered.` The widow, acting under the power of sale, sold a lot to D. for $9,000, receiving $6,000 in cash and D.'s bond for the balance, secured by mortgage on the premises. The money was used in paying incumbrances on the real estate. Subsequently, under an arrangement between the widow and D., the latter deeded back the lot; his mortgage thereon was cancelled and the widow executed a mortgage thereon to secure a loan made to pay the son his share, he having come of age. To secure D. the $6,000 paid by him, the widow executed her bond and to secure it a mortgage, as executrix, on another lot, which recited the power in the will, and that the bond was executed by her, as executrix, under the power. This mortgage was foreclosed and the purchaser on foreclosure sale refused to complete the purchase, claiming the title to be defective, on the ground that the bond was not signed by the executrix in her official capacity. *Held*, untenable.

The widow, as executrix and individually, and the three infant children were made parties to the foreclosure suit, and the latter appeared by guardian. The complaint set forth the power of sale and alleged that the mortgage was executed in pursuance of the power. *Held*, that the judgment was conclusive as against all the defendants in that action; that the mortgage was executed under and pursuant to the power, and that it was a valid lien.

(Argued April 22, 1895; decided June 11, 1895.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made February 15, 1895, which reversed an order of Special Term requiring F. J. Walgering, the purchaser at a partition sale, to complete his purchase and denied a motion by plaintiff for an order requiring her to do so.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William H. Hamilton* for appellant. The mortgage in question and the foreclosure thereof were regular and valid in all respects, and formed a sure basis of a perfect title in the purchaser at the foreclosure sale. (*Goebel* v. *Iffla*, 111 N. Y. 170; *Jordan* v. *Van Epps*, 85 id. 427; *Barnard* v. *Onderdonk*, 98 id. 158; *Frost* v. *Koon*, 30 id. 428; *Lockman* v. *Reilly*, 95 id. 64; *Riggs* v. *Pursell*, 66 id. 193; *De Forest* v. *Farley*, 62 id. 628; *Blakeley* v. *Calder*, 15 id. 617.) The order of the General Term is appealable to this court. (*Shriver* v. *Shriver*, 86 N. Y. 575.)

*Clemens J. Kracht* for respondent. The mortgage of $6,000, executed by Ann McConnell as executrix of the last will and testament of Thomas McConnell, deceased, on premises in question (belonging to estate of said deceased), as further collateral security for the payment of her individual bond and mortgage, was void. (*Clarke* v. *Coe*, 52 Hun, 379; *Lawrence* v. *Townsend*, 88 N. Y. 24, 29; *Muller* v. *Struppman*, 55 How. Pr. 521; *Smith* v. *Reid*, 134 N. Y. 568; *Hetzel* v. *Barber*, 69 id. 1; *Allen* v. *De Witt*, 3 id. 276.) The rights and interest of the three infant defendants named in will of Thomas McConnell, deceased, were not cut off by the judgment of foreclosure in *Devlin* v. *Martin*, although made parties defendant thereto. (*Lewis* v. *Smith*, 9 N. Y. 502; *Frost* v. *Koon*, 30 id. 428, 443; *M. Bank* v. *Thompson*, 55 id. 7; *Rathbone* v. *Hooney*, 58 id. 463; *E. S. Bank* v. *Goldman*, 75 id. 127; *Nelson* v. *Brown*, 144 id. 384.) The court will protect infants' rights, even if their guardian neglects them, and where a guardian neglects to ask for such a decree as the infant is manifestly entitled to the court will, nevertheless, make such a decree. (*Stephens* v. *Van Buren*, 1 Paige, 479; *Litchfield* v. *Burwell*, 5 How. Pr. 344; *Bulkley* v. *Van Wyck*, 5 Paige, 536; *Leggett* v. *Sellon*, 3 id. 84; *Freeman* v. *Munns*, 15 Abb. Pr. 468.) The referee's

deed in the foreclosure suit of *Devlin* v. *Martin,* conveyed at most to the purchaser of the premises in question the life estate of the executrix therein. It did not convey the right, title and interest of the infant devisees in said premises. (2 R. S. 192, § 158; Code Civ. Pro. § 1632; *C. P. E. Church* v. *Mack,* 93 N. Y. 488; *Mygatt* v. *Coe,* 8 N. Y. S. R. 434; *Clements* v. *Griswold,* 46 Hun, 377.) The purchaser is not bound to accept title upon affidavits submitted in answer to objections to the title, appearing in the record evidence of such title. (*Jordan* v. *Poillon,* 77 N. Y. 521; *Oppenheimer* v. *Humphreys,* 125 id. 733; *Coray* v. *Mathewson,* 44 How. Pr. 80; *B. P. Co.* v. *Armstrong,* 45 N. Y. 234.) The title to premises in question is not free from reasonable doubt. A grave question of law is presented whether the infant devisees may not successfully move the court, on a proper application, to vacate the judgment in *Devlin* v. *Martin,* or may not successfully maintain an action of ejectment to recover possession of the premises in question. (*Jordan* v. *Poillon,* 77 N. Y. 521; *Cambrelling* v. *Purton,* 125 id. 615.)

O'BRIEN, J. This was an action to partition certain real property in the city of New York. The final judgment was executed by a sale of the property, under the direction of a referee, and Frank J. Walgering became the purchaser of a house and lot, No. 441 West Forty-fifth street, for $15,800, he being the highest bidder at the sale.

Subsequently he refused to complete the purchase on the ground that the title tendered was not a marketable one. His objections to the title were overruled by the court at Special Term, and he was required to pay the balance of the purchase money upon tender of the referee's deed. This order, however, was reversed by the General Term. The plaintiff having appealed to this court, the question to be determined is whether, upon the facts appearing, there is such a reasonable doubt concerning the marketable character of the title tendered as to warrant the court below in discharging the purchaser from his contract obligations.

It is conceded that Thomas McConnell, who died August 24, 1871, leaving a will, was seized of the premises in fee. His widow and executrix mortgaged the house and lot to Charles Devlin on the 21st of June, 1873. This mortgage was foreclosed by decree entered in the Supreme Court May 24, 1877, and a sale had thereunder, which is the basis of the title which was tendered. If the sale upon this judgment bound the three infant children of Thomas McConnell, then unquestionably the title tendered is good, and the purchaser is bound to perform his contract.

In order to appreciate the question, it is necessary to get a clear view of the facts connected with the execution and foreclosure of this mortgage. By his will McConnell gave to his wife, after paying debts, all his real and personal estate during her natural life. This provision was, however, subject to an absolute gift to his eldest son of one-fourth of the estate, after deducting what the widow would be entitled to by way of dower, this one-fourth to be paid to him in cash on arriving at the age of twenty-one years. The remainder of the estate was given to the three younger children, after the death of the mother, and in such proportions as she might by will direct. His widow, Ann McConnell, was appointed executrix with power to sell or mortgage any part of the estate " for the purpose of carrying out the provisions of my will, or whenever, in her judgment, it may be for the best interest of my estate, applying the proceeds thereof to the benefit of my said estate." The will was proved and letters testamentary issued to the widow September 14, 1871. The real estate left under this will was all incumbered and in danger of being wasted or sacrificed unless means could be provided to pay obligations due or about to become due. On the 13th of June, 1872, the widow, acting under the power of sale in the will, conveyed, as executrix, to Charles Devlin, for the consideration of $9,000, a house and lot on Twenty-ninth street. She received from him $6,000 in cash, and the balance of $3,000 in a bond and mortgage executed to her as executrix. The $6,000 thus received was applied by her to paying off

incumbrances on the estate, and thus far there cannot be the slightest question as to her power or as to the regularity of her proceedings.

About a year afterwards the eldest son became of age, and he having demanded the share of the estate left him by the will, it became necessary to raise more money. The widow arranged with Devlin to take back the Twenty-ninth street house, and to cancel his bond and mortgage in order to enable her to give a first mortgage thereon for $5,000, to raise that sum to pay to the son in discharge of his interest in the estate. Devlin, who seems to have been a friend of the family, assented to this, and deeded the house to the widow, and had his bond and mortgage canceled, and she subsequently raised the money on it by first mortgage, to pay off the son's claim, and took from him a release of all his interest in the estate. But, though Devlin had re-conveyed the title, he had not yet been paid the $6,000 which he had advanced to the widow a year before, and which she had used for the benefit of the estate. That was not paid to him, but he elected to treat it as a loan to the executrix, and to secure its payment she gave to him a bond for that amount secured by a second mortgage on the Twenty-ninth street house and another second mortgage on the Forty-fifth street house in question. It is this last mortgage that we are now concerned with. That was executed to Devlin by the widow as executrix, and it recited the power in the will, and that the bond which accompanied it was executed by her as executrix, under the same power. It is now said that this mortgage was void, though executed by the widow as executrix, and this proposition is based upon the sole ground that the bond was not signed by her in her official capacity, and from this omission it is argued that the mortgage on the Forty-fifth street house was given to secure the widow's personal bond or personal debt.

This position is sought to be re-enforced by the circumstance that the re-conveyance by Devlin, of the Twenty-ninth street house, was to the widow individually, and that the title vested in her. This assumption, even if material, is not war-

ranted by the facts. The widow could convey none of the real estate devised by her husband except through the exercise of the power in his will, and she could not convey to herself, since she could not be both seller and purchaser, and she could not accomplish indirectly what she could not do directly. Therefore, she could not and did not acquire title to any of the land for her personal benefit, by conveying to Devlin under the power, and then taking a deed from him. Whatever form the transaction took, she must be deemed to have acted officially, and the property was in her hands for the benefit of the estate if the personal representative so elected to treat it.

There can be no doubt that the deed to Devlin was a good exercise of the power, and if the parties subsequently desired to change an absolute conveyance into a mortgage, it was competent for them to do so. All that was necessary was to cancel the bond and mortgage given by Devlin for the $3,000, and to stipulate in writing that the deed should stand as security for the $6,000 which he had advanced. But the necessities of the widow and the estate which she represented, were such that she required a more substantial advantage, and that was the postponement of Devlin's claim to another lien which she desired to put upon the premises, and hence the conveyance to her. All this was but a method of changing a deed to a mortgage and raising more money on the land. It thus became incumbered for all that it was worth, as subsequently shown by the foreclosure sale, so, in any view, the widow could derive no personal benefit from the conveyance to her of the Twenty-ninth street house. But, after all, the question whether the widow did or did not get the title to this house in her individual capacity is not very material. The real question is, whether the mortgage which she gave, as executrix, on the Forty-fifth street house, was given to secure her own debt, or for the benefit of the estate, under the power in the will. The fact that she omitted to add her official title to her signature to the bond is of no consequence. She might have omitted to give any bond, but the incon-

testable fact remains that it was given to secure the money which Devlin had advanced to her, a year before, every dollar of which she had used in paying off incumbrances upon the rest of the real estate. Thus the case stands upon the proofs appearing on this motion, and they are not contradicted.

It remains only to inquire whether any of these facts, having any material bearing on the question of title, were left open to contest by the judgment which Devlin subsequently obtained in the action to foreclose his mortgage.

No one claims that there is any defect in that judgment except the present purchaser. He does not suggest any possible claim or right existing in behalf of any one, except the three infant children, the residuary devisees of Thomas McConnell. Whether these children, or any of them, or any of their descendants, are still alive, does not appear, as the only affidavit in opposition to this motion was made by the attorney for the purchaser, stating what he claims to be defects in the judgment as it appears of record. The widow, as executrix and individually, was made a defendant in the foreclosure suit. So were the three children, who were represented by guardian, and interposed the usual answer, putting in issue the facts stated in the complaint. The referee reported that all the facts stated in the complaint were established, and the judgment which followed in terms adjudges that the defendants and all persons claiming through or under them be forever barred and foreclosed from all right or claim in or to the premises or any part thereof.

It is plain, therefore, that if the complaint was broad enough in its scope to embrace the facts stated, that they must be deemed to be determined by the judgment, and not open to further contest.

It alleges that Ann McConnell, the widow, gave her bond to Devlin for $6,000, to secure the payment of that sum, with interest, at the times stated. That default had been made in the payment of the principal, which became due June 21, 1876, less fifty dollars paid thereon. It also alleges the execution and delivery by the widow, as executrix, to Devlin, of a

mortgage on the Forty-fifth street house, to secure the payment of the bond, and in connection with this allegation, the following facts are stated: (1) That the house so mortgaged was part of the real estate of which McConnell died seized; (2) that he died August 24, 1871, leaving a will which was duly proved; that letters had been granted to the widow, and that the will contained the power to sell or mortgage; (3) that the mortgage was executed in pursuance of that power and authority; (4) that the three infant children of the deceased, giving their names, have or claim to have some interest in the premises, which, however, was subsequent to the mortgage and subordinate to it.

The statement that the mortgage was executed under and in pursuance of the power was, in substance and legal effect, equivalent to an allegation that it was given to secure a debt for the benefit of the estate, or to raise money for that purpose. If it was given to secure the personal debt of Ann McConnell, it was not given under or in pursuance of the power, but contrary to its terms and manifest purpose. It was, therefore, open to the children, under these pleadings, to show, if they could, what this purchaser now urges, that the mortgage was given to secure the personal debt of the widow, and hence the judgment must be deemed to have conclusively determined as against all the defendants in the action, or their privies, that the mortgage was executed under and pursuant to the power, and was a valid lien upon the Forty-fifth street house. It is not now open to any of the children, or any one claiming under them, to assert what is obviously untrue, in fact, that the mortgage was given to secure the personal debt of the executrix. That question was involved in the issues in the foreclosure suit, and has been forever set at rest by the judgment.

The order of the General Term should be reversed, and that of the Special Term affirmed, with costs.

All concur, except GRAY, J., not voting.

Ordered accordingly.